IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAM N. WHITE, JR., } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case. No.: 2:07-CV-1983-RDP |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Sam N. White, Jr. ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") benefits under Title XVI.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

**I.      Procedural History**

Plaintiff protectively filed his application for SSI benefits on July 17, 2002.  (Tr. 38-41). Plaintiff's application was denied and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 23A-F).  Plaintiff's case was heard by ALJ Debra H. Goldstein on July 19, 2004.  (Tr. 374-400).  In her September 23, 2004 decision, ALJ Goldstein determined that Plaintiff was not eligible for SSI benefits because he was not disabled within the meaning of the Act.  (Tr. 13-19).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 28, 2007. (Tr. 4-6). The ALJ's decision then became the final decision of the Commissioner, and therefore, a proper subject for this court's review under 42 U.S.C. § 1383(c)(3).

## II.  Standard of Review

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden

then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

> [T]he district court must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**III.     Procedural History and Factual Background**

Plaintiff was born on September 7, 1950 and completed the eleventh grade. (Tr. 38, 382). Upon failing to complete twelfth grade, Plaintiff was drafted into the Army where he served 18 months before being honorably discharged. (Tr. 39, 382-83). Plaintiff subsequently obtained a GED. (Tr. 382). In the past, Plaintiff has worked for a foundry, at a pipe company, and as a janitor for the U.S. Department of Veteran's Affairs (the "VA"). (Tr. 42-44, 383-84).

Plaintiff testified that he fell and fractured his back in 1991. (Tr. 392). Thereafter, Plaintiff claims to be able to sit in a chair without discomfort for 15-20 minutes and able to stand or walk around for approximately the same length of time. (Tr. 392-93). Previously, Plaintiff had filed an application for disability benefits that had been granted by an ALJ for a closed period from November 19, 1998 through April 30, 2000. (Tr. 13). Plaintiff alleges that he has been unable to engage in substantial gainful activity since December 3, 2004 due to high blood pressure, back pain, shoulder pain, hip pain, fatigue, heart disease, and arthritis. (Tr. 14, 52, 54, 385-88). Plaintiff reported a history of alcohol abuse but claims to have completed an alcohol dependancy treatment program in 2004. (Tr. 117, 215, 223, 388-89). Plaintiff has had two heart attacks and three stent placements with in-stent stenosis of 85% in June 2001 and moderate to severe re-stenosis of 60-70% on October 24, 2003. (Tr. 149-51). After the heart attacks, Plaintiff claims to have had problems standing due to balance and claims to get fatigued after walking two to three blocks. (Tr. 393-94). Plaintiff claims to be able to lift approximately 10 pounds. (Tr. 394).

On February 7, 2002, Plaintiff was examined by Dr. Carlson who observed numerous cardiovascular symptoms, as well as hip, shoulder, knee and back pain. (*See* Doc. #8). Dr. Carlson determined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, sit 3-4 hours and stand or walk 1-2 hours in an 8 hour work-day, occasionally stooping or performing gross or fine manipulation tasks, and never pushing, pulling, climbing, balancing, bending, reaching, operating motor vehicles, working around hazardous machinery, dust, allergens, or fumes. (Doc. #8, p. 373E).

On September 21, 2002, Plaintiff was examined by Dr. Howington. (Tr. 99-103). Dr. Howington diagnosed Plaintiff with coronary artery disease, status-post myocardial infarction x 2, and arthritis in bilateral shoulders. (Tr. 102). Based on his evaluation, Dr. Howington determined that Plaintiff could stand or walk for approximately 6 hours in an 8 hour work-day, lift approximately 20 pounds occasionally, and lift or carry 15 pounds frequently. (Tr. 103). Dr. Howington noted no postural or manipulative limitations, but said Plaintiff may have environmental limitations due to his coronary artery disease and, therefore, should not drive a vehicle due to his risk of myocardial infarction. (Tr. 103).

On October 28, 2002, Plaintiff was examined by Dr. Gerald Anderson, a Licensed Psychologist. (Tr. 104-107). Dr. Anderson diagnosed Plaintiff with depression, generalized anxiety disorder, post traumatic stress disorder, rule out borderline intellectual functioning, hypertension, various physical ailments, and a GAF score of 55. (Tr. 106-107). Dr. Anderson concluded that Plaintiff "likely has mild to moderate impairments in his ability to understand, carry out and remember instructions, and mild impairments in his ability to respond appropriately to supervision, co-workers and work pressures in a work setting." (Tr. 107). Dr. Anderson also noted that Plaintiff

reported his daily activities as "walking, watching television, washing dishes, and mopping the floor." (Tr. 106).

Plaintiff was admitted to the VA Hospital Emergency Room on October 22, 2003 for chest pains and was discharged on October 25, 2003. (Tr. 148). While in the VA hospital, Plaintiff underwent a MIBI stress test, a transthoracic cardiogram and a left heart catheterization. (Tr. 148). On discharge, Plaintiff was diagnosed with unstable angina, coronary artery disease, hypertension, alcohol abuse, osteoarthritis, hypercholesterolemia, and tobacco abuse, but otherwise in "good condition." (Tr. 148, 151). The VA recommended that Plaintiff engage in post-discharge activity "as tolerated." (Tr. 151). The VA also noted in the discharge paperwork that Plaintiff was to be evaluated for referral to a work therapy program and that he was to attend the Vocational Awareness Group headed by the state employment office representative. (Tr. 152).

Subsequent medical records from the VA show a diagnoses of coronary disease, status post myocardial infarction x2, osteoarthritis, dysthymic disorder, arthritic pain in multiple joints, including hips, shoulder, and upper back, hypertension, depression, alcohol dependency, and psychosis not otherwise specified. (Tr. 329-59). A record dated February 12, 2004 also reflects that Plaintiff was "for [the] past 3 years . . . working irregular day work." (Tr. 357).

**IV.     Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision reversed and benefits awarded, or in the alternative, remanded for further consideration. Plaintiff advances essentially three arguments why this court should grant the relief sought: (1) the ALJ's finding that Plaintiff could perform a limited range of light work is not supported by substantial evidence because the consultative examination by Dr. Carlson found him unable to perform sedentary work five months prior to his application date; (2)

the ALJ failed to apply the correct legal standard by considering the VE's testimony where Plaintiff met the requirements of a Medical Vocational Guidelines ("grids") Rule; and (3) the ALJ failed to apply the correct legal standard by applying the grids to deny disability without considering Plaintiff's non-exertional limitations.

## V.     ALJ Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged December 3, 2004 onset of disability. (Tr. 14, 18). The ALJ determined that Plaintiff has a combination of impairments considered "severe" under the Act: coronary artery disease, hypertension, osteoarthritis, back and shoulder pain, residual symptoms of post-traumatic stress disorder, anxiety, and alcohol abuse. (Tr. 15, 18). The ALJ further found that Plaintiff could not perform his past relevant work which was at the medium to heavy exertional level. (Tr. 17, 19). However, the ALJ found that Plaintiff's impairments, considered either alone or in combination, failed to meet or medically equal the criteria of an impairment listed at 20 C.F.R., Pt. 404, Subpt. P, App. 1. (Tr. 19). Based on all symptoms (including pain), the medical evidence, and testimony, the ALJ determined that Plaintiff retains the RFC to perform light and sedentary work limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently, standing or walking up to 2 hours, and sitting up to 6 hours per 8 hour day. (Tr. 19).

During the July 19, 2004 hearing, the ALJ called a vocational expert ("VE") to testify who was present throughout the hearing and familiar with Plaintiff's background, employment experience, and medical history. (Tr. 395). Based on the ALJ's hypothetical questions, the VE testified that given the claimant's age, education, past relevant work experience, and RFC there are a significant number of jobs in the regional and national economies which exist for an individual with Plaintiff's

limitations. (Tr. 395-97). For unskilled, entry level work, the VE gave examples of available jobs such as fillers in an industrial setting, hangers, machine tenders, and custodian. (Tr. 395-96). As for sedentary work, the VE gave examples of mold tenders and plastic industries, hand packers, and assemblers. (Tr. 396). Based on this testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 19).

## V.     Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.     The ALJ's Finding that Plaintiff Could Perform a Limited Range of Light Work was Made According to Proper Legal Standards and is Supported by Substantial Evidence.

Plaintiff's first argument is that the ALJ did not use proper legal standards and that substantial evidence does not support the ALJ's finding that Plaintiff could perform a limited range of light work because a consultative examination performed by Dr. Carlson found him unable to perform even sedentary work as of February 7, 2002. (Doc. #6, at 6). Plaintiff argues that based on Dr. Carlson's report and on hospital records from one year after Dr. Howington's examination, "a reasonable person would not have found that [Plaintiff] could perform light work." (Doc. #6, at 7). This argument is without merit as substantial evidence in the record supports the ALJ's determination and the ALJ used proper legal standards in arriving at her decision.

In order to qualify for benefits at a certain level of impairment, that impairment must last at that level of severity for at least twelve continuous months. *Barnhart v. Walton*, 535 U.S. 212, 218-219 (U.S. 2002). The U.S. Supreme Court has explained:

> [T]he statute, in the two provisions, specifies that the "impairment" must last 12 months and also be severe enough to prevent the claimant from engaging in virtually any "substantial gainful work." The statute, we concede, nowhere explicitly says that the "impairment" must be *that severe* (*i.e.,* severe enough to prevent "substantial gainful work") for 12 months. But that is a fair inference from the language.
>
> . . .
>
> The interpretation makes considerable sense in terms of the statute's basic objectives. The statute demands some duration requirement. No one claims that the statute would permit an individual with a chronic illness-say, high blood pressure-to qualify for benefits if that illness, while itself lasting for a year, were to permit a claimant to return to work after only a week, or perhaps even a day, away from the job.

*Id.*

In this case, the ALJ acknowledged Dr. Carlson's findings and found his report to be sufficient medical evidence to support a finding that Plaintiff could not perform light or sedentary work on February 7, 2002. (Tr. 16). However, Dr. Howington's examination conducted seven months later was medical evidence supporting a conclusion that Plaintiff had recovered sufficiently to perform light and sedentary work. (Tr. 99-103). The ALJ acknowledged that Plaintiff may in the past have been unable to perform even sedentary work, but the medical evidence showed that this level of disability lasted less than twelve months (as required by *Barnhart*). (Tr. 16). The ALJ's decision that Plaintiff is not currently entitled to disability benefits due to a failure to show disability for twelve continuous months was, therefore, made according to the proper legal standard. *Id.*

Plaintiff alleges that "subsequent treating sources records from Birmingham VA Hospital indicate that he could not have performed light work." (Doc. #6, at 6). While it may be true that such records could be viewed to "indicate" a particular conclusion, this does not mean that they

9

require it.  It is the purview (indeed the responsibility) of the ALJ to weigh the evidence and make findings of fact, and these findings cannot be overturned by this court where evidence merely indicates a contrary result.  *See, e.g., Martin*, 894 F.2d at 1529; *Bloodsworth*, 703 F.2d at 1239.  The psychological findings from Dr. Anderson in October 2002, the findings of the VA emergency room and those of other VA doctors in 2003 and 2004 contain substantial evidence of physical and mental limitations. However, the evidence in these records is equivocal and not so overwhelming that a reasonable person would necessarily conclude that Plaintiff is indefinitely precluded from performing a limited range of light work.  In other words, the medical evidence cuts both ways.

Though Plaintiff has heart problems and past hospitalizations for heart attacks and angina, Dr. Carlson's evaluation is the only one that restricts Plaintiff from performing light work.  As discussed previously, Dr. Carlson's findings are limited and to some extent contradicted by Dr. Howington's opinion that Plaintiff was capable of performing a greater range of work tasks.  (Tr. 103).  The February 2004 VA emergency room discharge records suggest that the treating physician considered Plaintiff capable of performing some work as evidenced by the referral to a Vocational Awareness Group. (Tr. 152).  These same discharge papers state that Plaintiff "was discharged in good condition," and that Plaintiff could engage in post-discharge activity "as tolerated." (Tr. 151).  Dr. Anderson's opinion, while reciting a litany of diagnoses, ultimately concludes that Plaintiff's work related psychological limitations are "mild to moderate" and assigns him a poor prognosis for treatment based on "failure to comply with the treatment program." (Tr. 107).  Furthermore, while the June 2004 records from the VA reflect ongoing treatment focusing on alcoholism and depression, they also document that "for [the] past three years [Plaintiff] has been working irregular day work." (Tr. 357).

Absent a showing of bias or improper influence, this court cannot second guess the ALJ's weighing of conflicting or ambiguous medical evidence even if it appears that the evidence preponderates against the ALJ's findings. *See, e.g., Miles v. Chater*, 84 F.3d 1397 (11th Cir. 1996); *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986). In this case, there is sufficient medical and testimonial evidence in the record, certainly more than a scintilla, to allow a reasonable person to conclude that Plaintiff is able to perform a limited range of light work. *See Martin*, 894 F.2d at 1529. No bias being apparent in the record or opinion below, this court must uphold the ALJ's decision because it is based on substantial evidence.

> **B.    The ALJ Did Not Err in Considering VE Testimony Where Plaintiff Did Not Qualify as Disabled After Application of the Grids.**

Plaintiff argues that the ALJ failed to apply the correct legal standard by considering VE testimony where Plaintiff met the requirements of 20 C.F.R. Pt. 404, Subpt P, App. 2 § 201.12. Plaintiff would be correct if it were the case that Plaintiff was limited to sedentary work. *See* Social Security Ruling 83-5a, 1983 WL 31250 *2 (S.S.A.1983). However, as discussed already, the ALJ found Plaintiff to have an RFC to perform a limited range of light work, rendering this section inapplicable. *See, e.g., Irby ex rel. Irby v. Halter*, 171 F.Supp.2d 1287, 1291 (S.D. Ala. 2001)(holding that where the Court found Plaintiff able to perform light work, it was irrelevant that he would be disabled under grid rules 201.12 and 201.14 because those rules required that he be limited to sedentary work). The ALJ was not bound by an inapplicable grid rule, and therefore, did not err by not applying it.

### C. The ALJ Properly Considered Plaintiff's Non-Exertional Limitations and Applied the Correct Legal Standard to Deny Disability.

Plaintiff also argues that the ALJ used a "mechanical application" of the grids based only on Plaintiff's physical limitations without considering his non-exertional impairments: psychotic disorder NOS, depression, anxiety, borderline intelligence, and pain. (Doc. #6, at 8). This argument is without merit because the ALJ specifically stated in her opinion that because of Plaintiff's additional non-exertional limitations, the Medical-Vocational Guidelines (the grids) are not the stopping point for her determination of Plaintiff's disability.

> The Medical-Vocational Guidelines are used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any non-exertional limitations.
>
> ...
>
> If the claimant were capable of performing the full range of light work, a finding of "not disabled" would be directed by the Medical-Vocational Guidelines. The claimant's ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations. An impartial vocational expert may be used to help determine whether or not there are a significant number of jobs in the national economy that the claimant can perform given his residual functional capacity and other vocational factors.

(Tr. 17-18).

Far from implementing a "mechanical application" of the grids, the ALJ properly recognized that Plaintiff's additional limitations precluded an automatic determination of disability from the grids alone, and that testimony from a VE should be used in conjunction with the "framework" of the grids to determine whether Plaintiff is disabled. *See* 20 C.F.R. § 416.969; 20 C.F.R. Pt. 404, Subpt P, App. 2 § 200.00(e)(2) (2003). *See also Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996) citing *Welch v. Bowen*, 854 F.2d 436, 439-40 (11th Cir. 1988)("[i]f nonexertional impairments

exist, the ALJ may use the grids as a framework to evaluate vocational factors but also must introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform"). The ALJ, therefore, applied the proper legal standard by using the result suggested by the grids in conjunction with VE testimony to determine that Plaintiff is not disabled.

## VI. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___12th___ day of February, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE